UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:17-cr-00308-NONE |
| Plaintiff, | No. 1:17-cr-00309-NONE |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| CLIFFORD J. BRIGHAM, | |
| Defendant. | (Doc. No. 41) |

Pending before the court is defendant Clifford J. Brigham's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is based in large part upon defendant's medical conditions and the alleged risks posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 41.)[1] For the reasons set forth below, defendant's motion will be denied.

**BACKGROUND**

In August 2003, defendant was sentenced in the U.S. District Court for the District of Oregon to a 37-month term of imprisonment with 60 month term of supervised release to follow after entering pleas of guilty to making false statements on a loan application in violation of 18

---

[1] Unless otherwise indicated, all docket citations refer to case number 1:17-cr-00309.

1

1 U.S.C. § 1014 as alleged in Counts One, Two, and Four of the underlying indictment, to making
2 false statements to the U.S. Small Business Administration in violation of 18 U.S.C. § 1001 as
3 alleged in Count Three, and to misusing a social security number in violation of 18 U.S.C.
4 § 408(a)(7)(B) as alleged in Counts Five and Six. (Doc. No. 16 at 1.) In 2008, defendant
5 Brigham was sentenced in the District of Oregon to 120 months in prison with a 36 month term of
6 supervised release to follow after he was convicted at jury trial of wire fraud in violation of 18
7 U.S.C. §§ 2 and 1343 (Counts 1–12, 14), mail fraud in violation of 18 U.S.C. §§ 2 and 1341
8 (Counts 15–18), money laundering in violation of 18 U.S.C. §§ 2, 1956(i)(A), and 1957 (Counts
9 21–23) and social security fraud in violation of 42 U.S.C. § 408(a)(7)(B) (Count 24). (Case No.
10 1:17-cr-00308, Doc. No. 16 at 1.) The conditions of defendant's supervised release term
11 included, among other things, financial and asset disclosures and that he not enter into business
12 arrangements without the prior approval of his supervising U.S. Probation Officer. (*Id.*; Doc. No.
13 16 at 1.) Following his service of his terms of imprisonment, defendant's term of supervised
14 release commenced on February 22, 2016. (*Id.*)

15 On February 9, 2018, after both of defendant's cases were transferred from the District of
16 Oregon to this district for supervision, a superseding petition for supervised release violations was
17 filed in each case. (*Id.*) The petitions alleged that defendant Brigham had violated the conditions
18 of his supervised release by obtaining loans exceeding $300,000 to purchase real estate through
19 his company, Genesis Capital Funding, LLC (Charge One), lying to the U.S. Probation Office by
20 stating that he was unemployed by Genesis Capital Funding, LLC (Charge Two), failing to notify
21 the U.S. Probation Office that he was employed by Genesis Capital Funding, LLC (Charge
22 Three), and being in contact with a known felon (Charge Four). (*Id.* at 2–3, 5–6.) On February
23 21, 2018, defendant admitted to Charges Two, Three, and Four of the superseding supervised
24 release violation petition. (Doc. No. 17.) On April 9, 2018, defendant Brigham's terms of
25 supervised release were revoked and he was sentenced in case 1:17-cr-00309 to a 36-month term
26 of imprisonment and in case 1:17-cr-00308 to a 24-month term of imprisonment with those terms
27 /////
28 /////

1   to run consecutively for a total aggregate term of imprisonment of 60 months with no term of
2   supervised release to follow.² (Doc. No. 22.)
3         Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") United
4   States Penitentiary in Tucson, Arizona ("USP Tucson"). (Doc. No. 50 at 3.) On March 13, 2020,
5   defendant, proceeding through appointed counsel, filed the pending motion for compassionate
6   release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 41.) On April 9, 2020, the government
7   filed its opposition to the motion, and on April 28, 2020, defendant filed his reply thereto. (Doc.
8   Nos. 50, 54.) On May 6, 2020, defendant's counsel filed a statement of supplemental authority in
9   support of the pending motion. (Doc. No. 55.)

10  **LEGAL STANDARD**

11  A court generally "may not modify a term of imprisonment once it has been imposed." 18
12  U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of
13  conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not
14  be modified by a district court except in limited circumstances."). Those limited circumstances
15  include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp.
16  3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"),
17  motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A)
18  (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for
19  compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the
20  FSA specifically provides that a court may

21        upon motion of the defendant after the defendant has fully exhausted
          all administrative rights to appeal a failure of the [BOP] to bring a
22

23  /////
24  /////

25

26  ² Defendant Brigham appealed from these sentences imposed after his supervised release terms were revoked, arguing that the sentencing judge had improperly relied on the prohibited
27  consideration of a need to punish in imposing the statutory maximum sentence in both cases and that the sentences were unreasonable in light of his age and poor health. (Doc. No. 32 at 2.)
28  Defendant's arguments were rejected on appeal and both sentences were affirmed. (*Id.*)

> motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

---

[3] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[4] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[5]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

---

released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

*United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Here, defendant asserts that he has satisfied the administrative exhaustion requirement is satisfied because he submitted a request for compassionate release to the BOP on January 14, 2020, and more than 30 days  "passed without a decision on the full request" made by defendant. (Doc. No. 41 at 6.)  According to documents filed by defendant in support of his motion , he submitted a request to BOP on January 14th seeking his release because, among other reasons, he is "suffering from a serious physical or medical condition" and "is experiencing deteriorating physical or mental health because of the aging process."  (Doc. No. 47-2 at 6) (quoting U.S.S.G. § 1B1.13.)  On January 23, 2020, the Warden denied that request, stating that defendant's "medical ailments are currently and will continue to be managed and monitored" and noting that defendant had not served more than 50% of his sentence of imprisonment.  (Doc. No. 47-1.) Defendant apparently takes the position that because more than 30 days passed after his

6

administrative request was submitted and in rejecting that request the Warden did not address whether defendant has a serious medical condition, either he has exhausted his administrative remedies or exhaustion would be futile or exhaustion is not required, and his motion for compassionate release is, in any event, properly before the court.  (Doc. Nos. 41 at 6; 54 at 5.)  The government counters, arguing that because the Warden denied defendant's administrative request, he was required to appeal from that denial to the "Regional Counsel" and "General Counsel" as set forth in 28 C.F.R. § 542.15(a), in order to exhaust his administrative remedies.  (Doc. No. 50 at 6.)

The government's argument in this regard is persuasive.  It is true that in denying defendant's request the Warden did not address whether defendant is "suffering from a serious physical or medical condition" and/or "is experiencing deteriorating physical or mental health because of the aging process."  However, to qualify for compassionate release under either criteria, the medical condition must be such that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility[.]"  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Therefore, by stating that defendant's medical conditions "will continue to be managed and monitored," the Warden did respond to the grounds raised by defendant in his request, albeit in a cursory fashion.  (*See* Doc. No. 47-1.)  *See* 28 C.F.R. § 571.63(a) ("When an inmate's request is denied by the Warden, the inmate will receive written notice and a statement of reasons for the denial.").  The Warden's denial of defendant's request for compassionate release was that his medical conditions are not so severe that they are incapable of being addressed by BOP.  Because defendant received a denial within 30 days of the submission of his administrative request, he was required to appeal from that decision in order to

/////

/////

/////

/////

/////

/////

exhaust his administrative remedies.[6]

As noted above, in the alternative, defendant Brigham urges the court to find that the administrative exhaustion requirement should be excused in his case because pursuing his administrative remedies would be futile and cause him irreparable harm. (Doc. No. 54 at 8.) As the COVID-19 virus continues to spread, district courts across the country have been presented with the question of whether § 3582(c)(1)(A)'s administrative exhaustion provision for defendants seeking to bring compassionate release motions in federal court can be excused. Some court have found that it can be, *see, e.g.*, *United States v. Connell*, ___F. Supp. 3d___, 2020 WL 2315858, at *3–5 (N.D. Cal. May 8, 2020), while others have held that the exhaustion requirement is jurisdictional and cannot be excused under any circumstances, *see, e.g.*, *United States v. Meron*, No. 2:18-cr-0209-KJM, 2020 WL 1873900, at *2 (E.D. Cal. Apr. 15, 2020). For the purposes of resolving the pending motion, however, this court need not resolve this issue. Even assuming that the administrative exhaustion requirement can be waived and should be in this case, for the reasons explained below, the court concludes that the requested reduction in defendant's sentence would be inconsistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a

---

[6] The court also rejects defendant's argument that the exhaustion requirement permits him to either appeal the Warden's denial or merely wait 30 days after filing his request, even if the Warden responded to his request within the 30-day period. (Doc. No. 54 at 5.) The 30-day requirement applies only if there has been a "lapse" in responding, which ordinarily means no action was taken within that period of time. *See United States v. Smith*, No. 4:95-cr-00019-LPR, 2020 WL 2487277, *6–8 (E.D. Ark. May 14, 2020) (collecting cases and concluding "the 'lapse of 30 days' refers to the warden's failure to act within 30 days, as opposed to simply 30 days passing"). Accordingly, if the Warden denies a defendant's request for compassionate release within 30 days, then the defendant is required to appeal from that denial pursuant to 28 C.F.R. § 542.15(a). *See supra* note 2.

compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a

"defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

On the merits, defendant argues that extraordinary and compelling reasons warranting his compassionate release exist here because of his medical condition. (Doc. No. 41 at 7.) Defendant Brigham contends that he is "suffering from a serious physical or medical condition [or] experiencing deteriorating physical health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (*Id.*) (quoting U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii)(I), (III).) Defendant also argues that the court should find that the catch-all exception of "other reasons" create "extraordinary and compelling reasons" warranting his release. (Doc. No. 41 at 7–8.)

According to defendant, he is 72 years old and suffers from prostate cancer, Stage 4 kidney disease on his only remaining kidney, osteoarthritis, and cataracts. (Doc. No. 41 at 11–16.) Defendant explains that since being sentenced to prison, his "circumstances have markedly changed" because "[h]e no longer is at risk for prostate cancer, but he has it." (Doc. No. 54 at 13.) Additionally, defendant represents that his kidney disease went from Stage 3 to Stage 4 "shortly before his federal sentence," which required BOP "to retest him and reassess the disease as Stage 4 because his prior kidney functioning indicated he suffered from Stage 3 kidney disease." (Doc. No. 41 at 15.) Defendant's most recent BOP medical records confirm his diagnosis of suffering from both prostate cancer and severe Stage 4 kidney disease. (Doc. No. 47 at 5.) Further, the BOP medical records also confirm that defendant suffers from traumatic arthropathy and (likely) cataracts and/or glaucoma. (*Id.* at 5, 12.) Finally, the BOP medical records indicate that defendant also suffers from essential hypertension. (*Id.* at 5.)

10

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant Brigham is at higher risk for contracting a severe illness due to COVID-19 because of his prostate cancer and chronic kidney disease. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 8, 2020) (explaining a "current[]" diagnosis of cancer and kidney disease "of any stage" in fact places individuals at risk). Moreover, defendant is at increased risk of suffering severe illness were he to contract COVID-19 because he is 72 years old, though the CDC states, "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.* Finally, defendant also "might be at an increased risk for severe illness from COVID-19" due to his hypertension and high blood pressure. *Id.* (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). It does not appear, however, that cataracts, glaucoma, or arthropathy are conditions that have been recognized as placing individuals at greater risk from COVID-19.

The government counters that defendant's medical condition does not warrant compassionate release because he recently denied "being in pain and is not visibly in pain," his "current condition is relatively stable," and he refused to accept certain medical treatment despite his doctor's orders. (Doc. No. 50 at 7–8.) With respect to his prostate cancer, defendant explains that BOP refuses to provide him with high intensity focus ultrasound ("HIFU") treatment in lieu of radiation which, according to him, "may negatively affect the health of his remaining kidney which is in Stage 4 kidney disease (kidney failure)." (Doc. No. 41 at 13.) Relatedly, he explains that his kidney disease, "which is not curable," will eventually proceed to Stage 5 at which point "his only hope is dialysis treatment." (*Id.* at 24.) The government notes the BOP's efforts to address defendant Brigham's medical conditions, including by "sending defendant to several outside specialists and transferring defendant across the country to explore cancer treatment at Duke University." (Doc. No. 50 at 7.) Presumably, the government is referring to defendant's unwillingness to undergo radiation instead of HIFU treatment. In this regard, the government argues defendant's unwillingness to accept radiation is "mere dissatisfaction" with BOP's

proposed course of medical treatment.  (*Id.* at 7–8) (quoting *United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019) ("Defendant's mere dissatisfaction with her course of medical treatment . . . do[es] not create such extraordinary and compelling reasons as to justify a sentence reduction.").)

The court concludes that defendant Brigham is "suffering from a serious physical or medical condition" and is "experiencing deteriorating physical or mental health because of the aging process" in a manner "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii)(I), (III).  Defendant's age, his medical history, his current serious medical conditions and his heightened risk of becoming severely ill were he to contract COVID-19 make him eligible for consideration of the relief he requests.  Although, it is also true that USP Tucson has suffered only a modest outbreak of the virus, with it being reported that nine inmates and seven staff members tested positive for COVID-19 and recovered, and with no deaths being reported.  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited October 8, 2020).[7]  Currently, it is being reported by the BOP there are only three inmates with active cases of COVID-19 at that prison.[8]  Nonetheless, given the litany of serious medical conditions defendant Brigham suffers from, his contracting of COVID-19 could pose a serious risk to him.  Defendants with similar, albeit not identical, medical conditions have been granted compassionate release in light of the circumstances posed by the COVID-19 pandemic.  *See, e.g.*, *United States v. Reid*, No. 17-cr-00175-CRB, 2020 WL 2128855, at *3 (N.D. Cal. May 5, 2020) (granting compassionate release where the defendant suffered from hypertension, high cholesterol, and Valley Fever); *USA v. Sarkisyan*, No. 15-cr-00234-CRB, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) (granting

---

[7] The undersigned does not necessarily take these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results.  However, there is also no evidence before the court contradicting those reported numbers.

[8] USP Tucson houses 1,350 inmates.  *USP Tucson*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/tcp/ (last visited Oct. 8, 2020).

compassionate release where the defendant suffered from hypertensive heart disease, chronic kidney disease, and obesity); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to a defendant who suffered from hypertension, pre-diabetes, prostate issues, bladder issues, and a dental infection); *United States v. Hammond*, No. 02-294 (BAH), 2020 WL 1891980, at *9–10 (D.D.C. Apr. 16, 2020) (issuing "indicative ruling" while a habeas appeal had divested the district court of jurisdiction, but concluding "extraordinary and compelling reasons" justified the release of 75 year-old prisoner suffering with prostate cancer, among other issues).

Considering all of the evidence before it, the court concludes that defendant Brigham is "suffering from a serious physical or medical condition" and is "experiencing deteriorating physical or mental health because of the aging process[.]" *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii)(I), (III).

Additionally, defendant's serious medical conditions are such that they "diminish" his ability to "provide self-care" within his prison, and he is not "expected to recover" from those conditions. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). First, as a threshold matter, defendant is not going to recover from his kidney failure, and the government does not argue otherwise. (Doc. No. 41 at 23.) Second, there is evidence before the court that defendant's medical conditions reduce his quality of life in prison. Defendant has fainted at least once due to an unknown cause, has difficulty walking and going up and down stairs due to his osteoarthritis in his left knee (which has "degraded to bone on bone"), and has "poor vision" and "reports it is like being in a fog when he is exposed to natural light." (*Id.* at 15–16.) Further, defendant has issues with respect to urinating, which causes him additional discomfort. (*Id.* at 14.) The BOP medical records largely support defendant's claims that his quality of life has been reduced while confined in prison. (Doc. No. 47 at 37, 39–42, 46–47, 49, 64–65 (sealed).) Last, defendant argues "he is not expected to recover based on the BOP's treatment offerings and plan," by which he presumably refers to, among other things, BOP's refusal to provide him with HIFU treatment which he desires with respect to his prostate cancer due to his concerns regarding the potential adverse effects of radiation on his last and failing kidney. (Doc. No. 41 at 20.) The court need

not resolve the parties' dispute over whether the BOP's denial of defendant's request for HIFU treatment as opposed to radiation treatment is sufficient to establish that defendant is unable to provide "self-care" inside USP Tucson.  Defendant has presented other evidence that he is unable to do so due to his various medical conditions.

Accordingly, given defendant's age, medical conditions and his medical history, in combination with the risk of COVID-19 at USP Tucson, the court concludes that the pending motion establishes "extraordinary and compelling reasons" warranting defendant's compassionate release under § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Although defendant may satisfy the first two requirements of his request for compassionate release, it remains his burden in satisfying the third and final requirement.  In this regard, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).[9]  *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 2020 WL 2572525, at *11.  Here, after careful review of the record, the court concludes that consideration of § 3553(a)'s sentencing factors do not support defendant's release at this time.

As the sentencing judge, defendant's supervising U.S. Probation Officer, and the prosecutor all noted at the time of his sentencing on his supervised release violations, defendant is a "con man."  Defendant Brigham is serving sentences for violating the conditions of his supervised release in two different cases that originated out of the District of Oregon relating to

---

[9] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

obtaining fraudulent loans, with losses to the victims of defendant's criminal conduct totaling over five million dollars.  (Doc. Nos. 50 at 2; 50-1 at 42 (District of Oregon Indictment in Second Case), 80 (District of Oregon Indictment in First Case); *see also generally* Case No. 1:17-cr-00308.)  In 2003, defendant was sentenced to 37 months in prison for his fraud offenses but was granted bail pending appeal.  (Doc. No. 27 (Sentencing Transcript) at 13.)  While out on bail pending appeal in that earlier case, defendant engaged in yet another fraud scheme to unlawfully obtain loans using straw buyers.  (*Id.* at 14.)  Defendant was convicted by a jury in that second case in 2007, and although the U.S. Probation Office recommended a sentence of 360 months in prison, the court sentenced defendant to 108 months in prison.  (*Id.* at 14–15.)

On December 19, 2017, a petition for violation of supervised release was filed in the District of Oregon and, on December 28, 2017, the District of Oregon transferred it to this district.  (Doc. Nos. 16 at 1; 10.)  A superseding petition for violation of supervised release was filed in this district shortly thereafter.  (Doc. No. 16.)  The superseding petition alleged, and defendant admitted, that he violated the conditions of his supervised release by falsely telling his supervising probation officer that he was unemployed, when in fact he was employed by his own limited liability company, and by associating with a known felon.  (*Id.* at 2–3; Doc. No. 17.)  At the time of his sentencing on the violations, the sentencing judge observed defendant was "a constant, perpetual con man."  (Doc. No. 27 (Sentencing Transcript) at 4–5.)  The court and the defendant engaged in a lengthy exchange at the sentencing hearing during which defendant Brigham asserted that he was defending against, in his view, his supervising probation officer's "absolute lie[s]."  (*Id.* at 5.)  The supervising probation officer was present at that hearing, and informed the court that "I believe that [defendant] is a career con man."  (*Id.* at 11.)  The Assistant United States Attorney (AUSA) present at the hearing, detailed defendant's extensive history of disobeying court orders and intimidating parties to court proceedings, for which he received an upward adjustment to his offense level for obstruction of justice enhancement under the advisory sentencing guidelines with respect to his 2006 conviction.  (*Id.* at 13–17.)  The AUSA concluded by stating, "the Court shouldn't believe anything that [defendant] says in terms of his desire to comply or his compliance to this point."  (*Id.* at 16.)  "He just keeps violating and

violating and violating. He is a con man." (*Id.*)  At the end of the hearing, the court responded to defendant's protestations by commenting: "I simply don't believe you.  You just don't have credibility."  (*Id.* at 26.)  The court then sentenced defendant to an aggregate prison term of 60 months for violating the conditions of his supervised release in both of his fraud cases.  (*Id.*; Doc. No. 22 at 2.)  Defendant has been imprisoned since his release was revoked on December 19, 2017, approximately 33 and half months ago, and his projected release date is not until March 23, 2022.  (Doc. No. 50 at 3.)

Defendant's extensive fraudulent conduct underlying his original crimes of conviction and his disregard of court orders while on supervised release weigh heavily against the granting of his request for compassionate release.  *See, e.g.*, *United States v. Scher*, No. 15-cr-00614 SOM, 2020 WL 3086234, at *3 (D. Haw. June 10, 2020) ("In considering Scher's history and characteristics and the need to afford adequate deterrence for his crime, this court notes Scher's extensive history of crimes of fraud or deceit."); *United States v. Van Dyke*, No. 2:15-CR-0025-JLQ, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020) (denying a motion for compassionate release, noting that "Defendant's history of repeated supervised release violations demonstrates a disregard for the conditions the Court has placed upon him").  As the government notes, defendant poses a danger to the community because he "has an over 20-year record of fraud and disobedience of court orders."  (Doc. No. 50 at 10) (citing U.S.S.G. § 1B1.13(2).)  While defendant argues he has programmed well in prison and been rehabilitated since starting the service of his most recent prison sentence, (Doc. No. 41 at 10–11), that fact alone, even if true, does not outweigh the defendant's history and characteristics.

Defendant has now served only approximately 33-and-a-half months, of his 60-month prison sentence.  (Doc. No. 50 at 3.)  His 60-month sentence on the supervised release violations took into account defendant's extensive history of fraud and deceit, as well as his medical conditions.  In the undersigned's view, defendant has had a number of opportunities to demonstrate his rehabilitation and ability to comply with court ordered conditions (imposed in order to protect the community from defendant Brigham's fraudulent activities) over the past 15+ years but has failed to do so.  Based on this track record, the court concludes that a 33-and-a-half-

16

month sentence would not afford adequate deterrence to criminal conduct nor would it protect the community. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *see also United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).[10]

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 41) is denied at this time.

IT IS SO ORDERED.

Dated:   **October 9, 2020**

UNITED STATES DISTRICT JUDGE

---

[10] Defendant has suggested that the court could amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 54 at 14.)  First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" and the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement").  The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. 33-and-one-half months) and modify the conditions of supervised release to require home confinement for the remainder of his 60-month sentence. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Brigham in a custodial setting. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard or early to a residential re-entry center, the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced at this time.